

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AAS/DMP

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 6, 2018

<u>By Hand Delivery and ECF</u>

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Dilshod Khusanov
> <u>Criminal Docket No. 17-475 (WFK)</u>

Dear Judge Kuntz:

The government respectfully submits this letter in advance of the defendant's bail hearing scheduled for January 10, 2018, to supplement the government's prior detention memorandum dated August 31, 2017.  In particular, the government proffers the following additional facts demonstrating that the defendant is a risk of flight and a danger to the community, in response to the assertion in the defendant's bail motion dated January 2, 2018, that the government's previous proffer of relevant facts was "reed-thin."[1]  (Def. Ltr. at 2).

As detailed in the August 31, 2017 letter, the FBI has been investigating a domestic network based in New York and elsewhere that has provided financial support for individuals who seek to travel to the Middle East to join the Islamic State of Iraq and al-Sham ("ISIS") or the al-Nusrah Front ("ANF").

Khusanov was a member of this domestic support network.  He donated his own money and worked with his co-conspirators to raise money from others that was intended to be used to help other individuals to travel to Syria to join and fight on behalf of ISIS or ANF.  The government has thus far identified three individuals who, with support of this domestic network, traveled to Syria to fight with ISIS or ANF.  All three individuals, who traveled to Syria in 2013, are believed to have been killed there while waging violent jihad.  The investigation has revealed Khusanov's connections with all three individuals and has established Khusanov's active membership in the network throughout the relevant period.

---

[1]     It is well-settled that the government is entitled to proceed by proffer in a detention hearing.  <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000).

The defendant's participation in the network continued beyond 2013. In particular, the defendant was also involved in raising money to assist Akhror Saidakhmetov to travel to Syria to wage jihad. (As the Court is aware, Saidakhmetov pleaded guilty to conspiring to provide material support to ISIS and was sentenced to 15 years' custody.)

For example, in a recorded telephone conversation on February 19, 2015, Abror Habibov discussed with Akmal Zakirov his purchase of a ticket for Saidakhmetov to travel to Syria and how they should raise money to defray the expenses. Habibov specifically mentioned that Zakirov should call the defendant Khusanov to help defray the expenses ("Call Dilshod [Khusanov], tell Dilshod [Khusanov] to give as much as they can . . . . Tell Dilshod [Khusanov] to convey it to [another possible donor "CC-1")] to give as much as they can.").

Toll records reveal that Zakirov, Khusanov and CC-1 were in frequent contact immediately after the call from Habibov to Zakirov during the evening of February 19, 2015. At approximately 11:36 p.m. that evening, Zakirov called Khusanov and left a message forwarded to voicemail. The following day on February 20, 2015, Khusanov called Zakirov in a 3-minute long call. Thereafter, on February 21, 2015, there were 3 calls – including one exceeding 15 minutes – between Khusanov and CC-1. On February 22, 2015, there were again 3 calls between Khusanov and CC-1. On February 23, 2015 – the day before Saidakhmetov's planned travel – there were 5 calls between Khusanov and a co-conspirator ("CC-2"), the last of which occurred at 4:13 p.m. At 4:26 p.m. that same day, there was a call exceeding 5 minutes Khusanov and CC-1. Based on the timing of these calls, it appears that Zakirov, Khusanov, and CC-1 were discussing raising money for Saidakhmetov's travel to Syria.

Bank of America records reflect a $1,000 wire transfer from the account of CC-1 to Khusanov's account on February 23, 2015. Surveillance footage and records from a Bank of America branch in Brooklyn reveals that, at 4:54 p.m. on February 23, 2015, CC-2 deposited $1,500 into Zakirov's account. During an interview, CC-2 admitted that he/she was directed to deposit the funds into Zakirov's account by Khusanov, supposedly for orphanages in Tashkent, Uzbekistan.

Additionally, on February 17, 2015, Khusanov and Azizjon Rakhmatov, who were both contacted by Zakirov regarding contributing to Saidakhmetov's trip to Syria, each transferred $100 from accounts in their own names and addresses into Zakirov's bank account, and the bank records reflect that the funds were sent to "Akmal Zakirov." Similarly, financial records for CC-1's account indicate transfers to Khusanov of $1000 on January 20, 2015, $100 on February 17, 2015, and $1000 on February 23, 2015.

In intercepted communications subsequent to the February 2015 arrests of Saidakhmetov and Habibov, Khusanov discussed manufacturing a cover story in the event of any confrontation with law enforcement authorities. Notably, Khusanov changed his phone number the day after Saidakhmetov's and Habibov's arrests. When later asked during a

2

consensual interview by members of law enforcement why he had stopped using the telephone number the day after the arrests, Khusanov responded, "[B]ecause I did not know what they were doing."

Other communications confirm Khusanov's intent to provide material support to ISIS and ANF by participating in this support network and by giving money to fund the travel of others to wage jihad in Syria. For instance, in a message sent in late 2014 that was recovered from Zakirov's cellular telephone seized at the time of Zakirov's arrest, Khusanov wrote the following message to Zakirov, in relevant part:

> My dear brother!!! I hope that the only [reason] that is preventing you from jihad is some mistakes and flaws that are occurring among the mujahedeen you witness or hear about. Now tell me, are these mistakes given any consideration in His Book and His Messenger's Sunnah for an excuse not to embark upon jihad for Allah? On the contrary, you are required to do, not one thing, but two things in these circumstances:
>
> 1.    If there is [an ongoing] jihad for Allah.
> 2.    You must warn your mujahedeen brothers against [committing] mistakes.

The government respectfully submits that these specific facts, which represent only a portion of available evidence against Khusanov, attest both to the strength of the evidence as well as the flight risk and danger to the community that Khusanov represents, particularly in light of the three foreign fighters who all died in combat, thanks in large part to Khusanov's support network.

In short, the defendant presents both a risk of flight and a danger to the community. The charges he is facing are serious. Those charges carry a presumption of detention and a potential sentence of up to 30 years' imprisonment. The evidence supporting those charges is strong. As a result, the government respectfully submits that no condition or combination of conditions will assure the safety of the community, the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.[2]

---

[2]    Should the Court determine that the defendant is bail-eligible, the government respectfully requests leave of the Court to interview any proposed sureties.

3

For all of these reasons, as well as those articulated in the government's August 31, 2017 letter, the defendant should be detained pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/ Alexander A. Solomon
Alexander A. Solomon
Douglas M. Pravda
Peter W. Baldwin
David K. Kessler
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (by ECF)

4